UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael T.,[1] | ) | C/A No. 5:23-00443-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Martin O'Malley,[2] Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the Commissioner's decision for the reasons discussed herein.

I.    Relevant Background

A.    Procedural History

On October 10, 2021, Plaintiff protectively applied for DIB benefits under Title II of the Act. Tr. 187. Plaintiff alleged a disability onset date of July 31, 2021. Tr. 187. Plaintiff's application was denied initially, Tr. 67, and upon reconsideration, Tr. 77, and Plaintiff requested

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Martin O'Malley was confirmed as Social Security Commissioner on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Martin O'Malley for Kilolo Kijakazi as Defendant in this action.

a hearing before an Administrative Law Judge ("ALJ"). Tr. 99. The administrative hearing was held on October 19, 2022, before ALJ Julie Petri. Tr. 36-66. On November 3, 2022, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 11-35. Plaintiff requested review of the ALJ's decision. Tr. 179-83. On January 10, 2023, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, thereby making the ALJ's decision the final decision of the Commissioner, Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on February 1, 2023. ECF No. 1.

B.     Plaintiff's Background

Plaintiff was born in September of 1979 and was 41 years old as of his alleged disability onset date of July 31, 2021. Tr. 207. He is 6-foot, 1 inch tall and weighs 235 pounds. Tr. 210. Plaintiff served in the United States Navy and received a 100% disability rating from the Department of Veterans Affairs ("VA") on January 24, 2022. Tr. 203-206. In his form Disability Report-Adult, Plaintiff indicated he completed his education through two years of college, he did not attend special education classes, and he had completed specialized job training in the field of merchant marine in June of 2019. Tr. 212. Plaintiff indicated that prior to becoming unable to work, he worked for fifteen years as an aviation ordnanceman with the United States Navy. Tr. 212; Tr. 43. This job included working with machines, tools or equipment, and incorporated technical knowledge and skills into its tasks. Tr. 213. Plaintiff estimated that while in this job, he would walk and stand 8 hours a day, sit for 2 hours a day, stoop, kneel and crouch for 8 hours a day, and handle large objects for 8 hours a day. Tr. 213. He was required to lift ordnance ranging from 5-1,000 pounds. Tr. 213. Plaintiff supervised approximately 40 people while serving in the U.S. Navy. Tr. 213. Plaintiff indicated he stopped working on July 31, 2021 due to the following physical or mental conditions: sleep apnea, bad knees and back, bad shoulders, bad feet, a hernia, migraines and Post Traumatic Stress Disorder ("PTSD"). Tr. 211.

2

In a Function Report-Adult, dated October 15, 2021, Plaintiff listed the illness and injuries limiting his ability to work as follows: pain in both knees, PTSD, shoulder pain, migraines, and back pain. Tr. 225. Plaintiff further indicated that his mother cares for his son, that he remains isolated in his house due to depression, and both his PTSD and sleep apnea affect his ability to sleep. Tr. 226. Plaintiff is able to drive a car, handle his finances, and shop via the computer. Tr. 228. Plaintiff regularly travels to church and to his parent's house. Tr. 229. Plaintiff indicates he is unable to follow written instructions well, but he is able to follow spoken instructions well. Tr. 230. He lists the following medications that he takes: Motrin, Famotidine, Rabeprazole, EpiPen, and Sumatriptan. Tr. 232.

In a Disability Report-Appeal dated February 8, 2022, Plaintiff indicated that since his last disability report, dated October 12, 2021, his medical conditions changed because his knees "popped," and he had an MRI completed. Tr. 345-46. Plaintiff also indicated he had a new mental condition in that he suffered a mental breakdown at a grocery store. Tr. 346. Plaintiff further included that he has had trouble going out in public because his anxiety and PTSD are bothering him and affecting his daily life. Tr. 348.

In a second Function Report-Adult, Plaintiff added that he was also experiencing a ringing in his ears. Tr. 354; 359. Plaintiff further reported that he fears people with masks and wearing guns, and he does not like loud noises. Tr. 358.

C.    The Administrative Proceedings

Plaintiff appeared, along with his attorney, for an administrative hearing on October 19, 2022, in Greenville, South Carolina. Tr. 38. Vocational expert ("VE") Marilyn Stroud also appeared. *Id.* While the transcript indicates Plaintiff appeared in person, the substance of the information within the transcript clearly indicates that the hearing was conducted telephonically

due to Plaintiff's counsel having been exposed to an illness. Tr. 38. After a short opening statement from counsel, Plaintiff was sworn in as a witness. Tr. 40-41.

       1.     Plaintiff's Testimony

Plaintiff testified that he received an associate's degree in project management. Tr. 42. Plaintiff testified that he lives at home with his wife and two young children. Tr. 42. Plaintiff testified that prior to retiring from the Navy, he worked as an aviation ordnanceman chief, which involved loading guns, flat line duties, and obtaining unit supplies. Tr. 43. Plaintiff testified that on August 9, 2022, he had surgery on his right knee. Tr. 44. Plaintiff explained he is going to have his other knee operated on, as well. *Id.* Plaintiff testified that his right knee is still "popping." *Id.* Plaintiff testified that, after the surgery on his right knee, he went to physical therapy, but he has not made progress toward improvement, and he still experiences pain. Tr. 44-45. Plaintiff also explained that he receives mental health treatment every two weeks. Tr. 45. In response to the ALJ's question about why Plaintiff believed he could not work, Plaintiff explained that he has problems being in closed spaces and around a lot of people, his knees and his hernia are bad, and he has severe PTSD due to his time in the military. Tr. 45. Plaintiff further testified that his weight affects his blood pressure and pressure on his knees. Tr. 46.

Plaintiff explained at the hearing that he is having issues with his right shoulder and arm that cause his shoulder to "click" and "pop." Tr. 48. Plaintiff stated he receives cortisone shots in his right shoulder; however, he is unable to lift anything heavy. *Id.* Plaintiff testified he suffered from back pain and feet and ankle pain, as well as having undergone a hernia surgery and awaiting another hernia surgery. Tr. 49. Plaintiff testified he had both a hiatal and an inguinal hernia, and they impaired his ability to lift anything, as well as cause him acid reflux. Tr. 49-50. Plaintiff further testified that he has daily ringing in his ears. Tr. 50. Plaintiff testified he was diagnosed with obstructive sleep apnea and requires a CPAP machine to sleep. He further testified that he

does not have a lot of energy during the day because he does not sleep correctly and wakes up throughout the evening. Tr. 51. Plaintiff testified that he received cortisone shots in both knees, as well as his right shoulder; however, these shots were not helpful. Tr. 51.

Plaintiff testified that due to his knees and back problems, he has difficulty sitting and standing for periods longer than ten minutes. Tr. 52. He indicates he is able to walk for approximately 5-10 minutes before he needs to take a break due to issues with his knees, feet, and back. Tr. 53. Plaintiff testified he also suffers from migraines two to three times per week. Tr. 53. He suffers from PTSD and associated nightmares that he states occur on a daily basis. Tr. 54-55. Plaintiff testified that he rarely gets out of the house and does not often spend time with people. Tr. 56. Plaintiff indicated that he did not have any hobbies or activities, other than reading the newspaper and reading military articles. Tr. 57. However, Plaintiff also testified he occasionally has trouble focusing on what he is reading. Tr. 58.

### 2.    VE's Testimony

VE Stroud also testified at Plaintiff's administrative hearing. Stroud described Plaintiff's past relevant work ("PRW") as a "composite work," with the first part being an aircraft armament mechanic, DOT Code 632.261-010, specific vocational preparation ("SVP") of 6, generally performed at medium level, and actually performed at the very heavy level. Tr. 60. The second part of his work she described as commanding flight ops or flight operation specialist, DOT Code 248.387-010, with an SVP of 6, generally and actually performed at the light level. Tr. 60-61.

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, and education with the past work as described, performing light work, but who was limited in that:

> he could never climb. He could frequently balance.  Occasionally stoop, kneel, crouch, or crawl. With his right dominant upper extremity, he could frequently reach in all directions except occasional overhead reaching. He could tolerate no exposure to workplace hazards such as the use of moving machinery and exposure

5

to unprotected heights. He would be further limited to occasional interaction with the public and coworkers but could not perform tandem or team dependent tasks.

Tr. 61. The ALJ asked if the hypothetical individual would be excluded from past work. The VE responded that he would. Tr. 61. In response to the ALJ asking whether other jobs would be available, the VE testified there would be and identified those jobs as: (1) routing clerk, DOT Code 222.687-022, SVP unskilled level of 2, light exertion, with approximately 105,000 jobs in the national economy; (2) airline security records agent, DOT Code 372.667-010, SVP unskilled level of 2, light exertion, with approximately 37,000 jobs in the national economy; and (3) marker, DOT Code 209.587-034, SVP unskilled level of 2, light exertion, with approximately 131,000 jobs in the national economy. Tr. 61-62. The ALJ then asked about a hypothetical individual who was additionally limited in that he could only perform simple, routine tasks performed two hours at a time who could understand or remember simple or detailed instructions and would be limited to only simple, work-related decisions and occasional changes in the work setting or work methods. The VE responded that it would not change her answer. Tr. 62. In the third hypothetical, the ALJ asked the VE to consider an individual that was as limited as in the second hypothetical but would be limited to sedentary work. The VE responded that this hypothetical individual could perform the following jobs: (1) addresser, DOT Code 209.587-010, SVP unskilled level of 2, sedentary exertion, with approximately 11,000 jobs in the national economy; (2) cutter and paster, DOT Code 249.587-014, SVP unskilled level of 2, sedentary exertion, with approximately 3,200 jobs in the national economy; and (3) dowel inspector, DOT Code 669.687-014, SVP unskilled level of 2, sedentary exertion, with approximately 6,400 jobs in the national economy. Tr. 62-63. Finally, in the fourth hypothetical, the VE was asked to assume a hypothetical individual as described above, but with the additional limitation of being off task 15% or more of the workday in addition

6

to regularly scheduled breaks. The VE testified there would be no jobs available for this hypothetical individual. Tr. 63.

The VE said her testimony was consistent with the DOT and companion publications except the information regarding time off task, as it is not directly defined by the DOT. Tr. 63. Instead, that testimony was supported by her professional experience and education but was not inconsistent with the DOT. Tr. 63. The VE further indicated that the DOT also does not elaborate on reaching, but her answer would be the same. Tr. 63.  Plaintiff's counsel then asked the VE whether there would be any jobs available if the hypothetical individual described was modified to less than occasional interaction with the public and coworkers, and the VE indicated there would not be any jobs available. Tr. 64. Plaintiff's counsel then asked the VE to consider the hypothetical individual but include a person who was only able to sit for two hours, stand for two hours and walk for two hours in an 8-hour workday. The VE testified that there would not be any jobs available. Tr. 64. Finally, Plaintiff's counsel asked whether differences in absences matter between unskilled versus skilled work, and the VE testified that it would not, because the threshold is no more than one day a month. Tr. 65. Plaintiff's counsel then concluded his questions and made a few additional observations to the ALJ regarding Plaintiff's work in the Navy and the fact that the VA adjudicated Plaintiff permanently and totally disabled. Tr. 65.

With no other further questions, the hearing closed. Tr. 65-66.

## II.  Discussion

### A.    The ALJ's Findings

In her February 16, 2022 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2.      The claimant has not engaged in substantial gainful activity since July 31, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, degenerative joint disease of the right shoulder, obstructive sleep apnea, obesity, depressive disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can never climb; frequently balance; and occasionally stoop, kneel, crouch, or crawl. With his dominant right upper extremity, he can frequently reach in all directions except occasionally reach overhead. He can tolerate no exposure to workplace hazards (such as the use of moving machinery and exposure to unprotected heights). He is limited to simple, routine tasks performed two hours at a time with only simple work-related decisions and occasional changes in the work setting or work methods. He can understand or remember simple or detailed instructions. He can tolerate occasional interaction with the public and coworkers but cannot perform tandem or team-dependent tasks.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on September [redacted], 1979 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2021, through the date of this decision (20 CFR 404.1520(g)).

Tr. 11-29.

B.  Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v.*

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

---

*Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to try these cases de novo or "resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.     Analysis

Plaintiff offers two related arguments to the court in support of finding that the ALJ erred in her decision denying Plaintiff benefits. Plaintiff first argues that the ALJ failed to fully and properly develop the record as it related to Dr. P. Patel, a consultative medical examiner. ECF No. 16 at 4. Plaintiff further argues the ALJ failed to properly weigh Dr. Patel's medical opinion and account for the same in the residual functional capacity ("RFC") as it related to sitting. ECF No. 16 at 6. The Commissioner responds that substantial evidence supports the ALJ's decision. ECF No. 18.

A. Dr. Patel's Findings

Plaintiff argues that the ALJ's analysis as to Dr. Patel's findings, specifically that the doctor's opinion is "vague and relies on the claimant's subjective complaints" is factually incorrect. Aside from that, Plaintiff argues the ALJ has a duty to seek clarity or to rectify any vague information by an examiner. ECF No. 16 at 6. The Commissioner disagrees that the ALJ needed to further the develop the record as it relates to Dr. Patel's opinion.  ECF No. 18 at 16.

Dr. Patel examined Plaintiff on December 27, 2021 for a disability examination. Tr. 766. Dr. Patel received Plaintiff's medical history and review of systems before performing a physical examination. Tr. 767. Dr. Patel noted that Plaintiff was obese, that his extremities had normal range of motion, and that he had good grip and good strength. Tr. 768. Dr. Patel did indicate during the physical examination that Plaintiff had a normal gait and squatting was normal, albeit pain in Plaintiff's knees. Tr. 768. Dr. Patel observed that Plaintiff did not have spinal tenderness, and he could bend at the waist, but his leg raising was restricted due to pain. Tr. 768. Dr. Patel also observed limitation in movement in Plaintiff's right shoulder, though he noted normal range of motions in his knees. Tr. 768. Dr. Patel's impressions were that Plaintiff had multiple problems that were ongoing, that he has a hard time being around people, a hard time staying alone in the

room, and a hard time doing any increased physical work, leg lifting, pulling, pushing, standing or sitting for a long time. Tr. 768.

Plaintiff argues that Defendant had an obligation to "reach out to Dr. Patel for clarification of his opinion" if Defendant was going to dismiss the opinion as being based upon Plaintiff's own complaints, and particularly because the ALJ described Plaintiff's opinion as "vague." ECF No. 16 at 5. Further, Plaintiff argues that it is clear from Dr. Patel's report that he performed a physical examination upon Plaintiff. Put simply, Plaintiff argues that the ALJ abused her discretion in denying his request to "fully develop the record." ECF No. 16 at 6. The Commissioner disagrees. As pointed out by the Commissioner, an ALJ may recontact a consultative examiner when his or her report is "inadequate or incomplete." 20 C.F.R. § 404.1519p(b). The Commissioner argues that contrary to being "inadequate or incomplete," Dr. Patel's report included Plaintiff's medical complaints and medical history, his diagnoses, detailed information regarding Dr. Patel's physical assessment, and ultimately, Dr. Patel's opinion. ECF No. 18 at 15; *see also* Tr. 766-769. These are the required elements as outlined in the regulations. *See* 20 C.F.R. § 404.1519n(c).

The regulations provide that "the facts in a particular case and the information and findings already reported in the medical and other evidence of record will dictate that extent of detail needed in the consultative examination report." *See* 20 C.F.R. § 404.1519n(b). Further, the regulations provide that the detail and format of these reports will vary. *See* 20 C.F.R. § 404.1519n(b). The regulations indicate that an ALJ has a duty to re-contact a consultative examiner if the report is "inadequate or incomplete;" however, the Plaintiff's argument that such a duty was triggered by the ALJ's statement that Dr. Patel's opinion was "vague and relies on the claimant's subjective complaints" fails under the circumstances in this case. As previously explained, Dr. Patel's report included all of the required elements as set forth in the regulations. Moreover, the ALJ's analysis contained more than this one sentence regarding Dr. Patel's opinion. The ALJ additionally

explained that Dr. Patel's examination included both a review of Plaintiff's treatment notes and an in-person examination using objective techniques; however, the ALJ determined that the objective evidence did not support Plaintiff's subjective complaints. *See* Tr. 26. Instead, the ALJ determined that Dr. Patel's opinions seemed to be based on those subjective complaints, rather than the physical examination, which reflected relatively normal ranges of motion, except for straight leg raising, and in Plaintiff's shoulder, and his lumbar spine. *See* Tr. 770. Moreover, the ALJ explained that Dr. Patel's opinion stated Plaintiff would have a "hard time" performing certain activities, but he did not provide an opinion that would aid in determining Plaintiff's residual functional capacity. Tr. 26. A reading of the ALJ's analysis makes clear that she found Dr. Patel's opinion unpersuasive because she determined that Dr. Patel's own objective examination did not support the degree of limitations intimated within the opinion. A review of Dr. Patel's opinion shows that he adequately outlined Plaintiff's medical problems and past medical history, he questioned Plaintiff about his symptoms, he reviewed the older VA medical records, and he performed a physical examination that included taking Plaintiff's vitals, determining his grip strength and ability to perform functions such as squatting and walking, as well as testing Plaintiff's ranges of motion in his knees, ankles, and legs. Tr. 767-68. In his reply brief, Plaintiff argues that the ALJ implied the report was inadequate or incomplete. However, the undersigned disagrees.

Within her decision, the ALJ documented the fact that Dr. Patel performed an adequate examination, but she ultimately determined Dr. Patel relied on Plaintiff's own subjective complaints, rather than his examination, to formulate his opinion. The undersigned finds that under these facts, the ALJ was not required to contact Dr. Patel for additional information. *See Flythe v. Berryhill*, 1:17-cv-591, 2019 WL 2336998, at *2 (M.D.N.C. June 3, 2019) (rejecting a claimant's argument that a physician's opinion was inadequate when the ALJ stated that the opinion was "not sufficiently functional in nature," despite the fact that the ALJ provided a lengthy functional

assessment).  The undersigned finds that the ALJ's determination that Dr. Patel's opinion was unpersuasive does not equate to a finding that it was incomplete under the facts and circumstances of this case.

### B. Failure to Properly Weigh Dr. Patel's Opinion

Relatedly, Plaintiff argues that the ALJ committed reversible error in failing to properly weigh Dr. Patel's medical opinion and account for it in Plaintiff's RFC as it relates to Plaintiff's ability to sit. The Commissioner disagrees.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (emphasis in original). The RFC assessment is a "function-by-function assessment based upon all of the relevant evidence" of an individual's ability to work. *Id.* at *3. At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4).  The Administration's policy interpretation on assessing an individual's RFC emphasizes that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR § 404.1545 and 416.945." SSR 96-8p. The RFC must consider all of a claimant's impairments, include those found to be non-severe. *See* 20 C.F.R. § 404.1520(e).

The ALJ must also consider and evaluate opinion evidence. For benefits applications filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply. Under these new regulations the ALJ need not assign evidentiary weight to medical opinions or provide treating source opinions

with special deference. 20 C.F.R. § 404.1520c(a). The most important factors in considering a medical source opinion are supportability and consistency. 20 C.F.R. § 404.1520c(2). Additionally, the ALJ may consider the medical source's relationship to the client, the medical source's specialization, and other factor's such as the source's familiarity with other evidence or his understanding of the disability program's policies. 20 C.F.R. § 404.1520c(c). When a medical source provides several opinions or findings, the ALJ will evaluate the persuasiveness of the opinions "together in a single analysis." 20 C.F.R. § 404.1520c(b)(1).

As argued by Plaintiff, the ALJ failed to properly consider Dr. Patel's opinion, specifically, the opinion as to Plaintiff's ability to sit for long periods of time. Plaintiff argues that despite Dr. Patel's findings that Plaintiff suffered from several issues that were long-standing, such as pain in his knees, anxiety, PTSD issues, decreased lumbar spine range of motion, and decreased right shoulder range of motion, the ALJ dismissed his findings. Specifically, Plaintiff points out that Dr. Patel stated that Plaintiff would have a hard time sitting for long periods. *See* Tr. 768. Similar to Plaintiff's argument that the ALJ erred in failing to get a more complete opinion from Dr. Patel, Plaintiff argues the ALJ's analysis as to the opinion is flawed in that the ALJ stated Dr. Patel did not provide any functional limitations, despite stating this opinion regarding Plaintiff's functional ability to sit. The Commissioner contends that the ALJ explained in detail the support for the RFC, including the evidence that led her to determine more limiting restrictions such as Dr. Patel's opinion that Plaintiff would have a "hard time" standing for long or sitting for long periods, were not supported by the medical records. Tr. 768.

The ALJ considered Plaintiff's medical records, objective testing, and his own reporting of his symptoms to support her RFC determination. In reviewing Plaintiff's function reports, Plaintiff does not report problems with sitting, despite otherwise spelling out his problems with standing, squatting, bending, and kneeling, until after he underwent knee surgery in August 2022. Tr. For

example, in Plaintiff's Function Report dated October 15, 2021, Plaintiff did not indicate that he had trouble sitting, despite checking boxes on other functional limitations. Tr. 225-230 Similarly, in a Function Report dated February 17, 2022, while indicating he had bad knees, he does not list sitting as a function issue. Tr. 359. These reports, as well as Dr. Patel's assessment of Plaintiff, occurred several months prior to Plaintiff's knee surgery.

In considering the degenerative joint disease of the bilateral knees, the ALJ considered the fact that he had surgery on his right knee in August 2022 and Plaintiff's own reports at the hearing that he experiences pain and popping in his knee after that surgery. Plaintiff testified at the hearing that he has difficulty sitting because his knees "lock up" and he can only sit in an office chair for ten minutes. The ALJ, in considering the evidence as a whole, determined that the evidence did not support the opinion by Dr. Patel limiting Plaintiff with the inability to sit for long periods. Plaintiff argues that Dr. Patel's physical examination supports his opinion that Plaintiff would have a "hard time sitting," for example, because he had positive straight leg testing in the sitting and supine positions and decreased lumbar spine range of motion. However, the ALJ provided medical evidence to support her contention that Plaintiff would be able to perform sedentary work. Indeed, while Dr. Patel's physical examination does include these findings, the ALJ determined that Dr. Patel's other findings do not support more limiting work. For example, both his hips and knees were within normal range of motion limits. Tr. 770. Plaintiff further argues that, despite finding the opinion unpersuasive, the ALJ used Dr. Patel's evaluation to support the ALJ's other findings that Plaintiff's impairments were not as severe as alleged. However, Plaintiff fails to acknowledge that Dr. Patel's examination included several assessments or observations that were normal. Tr.768; 770. For example, Dr. Patel noted that the bilateral knee exam showed normal range of motion. Tr. 768. In his Reply, Plaintiff argues the ALJ cherry-picked the evidence because the ALJ "dismissed" Dr. Patel's opinion, while at the same time acknowledging the ALJ relied upon Dr.

Patel's objective findings when discussing the RFC. Dr. Patel did note that Plaintiff was obese, had positive straight leg tests and had decreased lumbar range of motion; however, the other objective tests were normal. The ALJ explained how she considered this evidence in formulating the RFC and so limiting the RFC to account for these medical issues. Moreover, the ALJ explained that the treatment records show that he received therapeutic injections and physical therapy for his knees, and after these treatments Plaintiff was able to walk unassisted, exhibited normal strength testing and had intact sensation. Tr. 22. Plaintiff, at times, reported various levels of improvement, including "near complete relief." Tr. 22. The ALJ also considered the MRI of both Plaintiff's left and right knee. Tr. 22. Additionally, it is clear from the decision that the ALJ factored in Plaintiff's knee problems in determining that he should be restricted in the amount of weight he can lift, and his ability to stand or walk. Tr. 25. As far as the specific explanation of Dr. Patel's medical opinion, the ALJ determined that the opinion that Plaintiff would have a "hard time" engaging in certain activities (i.e. standing or sitting), appeared to have been based on Plaintiff's subjective complaints, rather than the physical assessment. Tr. 26. While Plaintiff may disagree with the ALJ's ultimate conclusion, this court may not reweigh conflicting evidence or substitute its own judgment for that of the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, in determining whether substantial evidence supports the ALJ's assessment of Dr. Patel's opinion, the undersigned finds the decision sufficient to meet that standard.

IV.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported by substantial evidence. Based on the foregoing, the undersigned finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal

standard. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g).

Therefore, the Commissioner's decision is affirmed.

      IT IS SO ORDERED.

February 23, 2024                        Kaymani D. West
Florence, South Carolina           United States Magistrate Judge